Filed 11/23/22 In re M.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>M.D.,<br><br>    Defendant and Appellant. | F084449<br><br>(Super. Ct. No. JD141972-00)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County. Christie Canales Norris, Judge.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., Smith, J. and Meehan, J.

# INTRODUCTION

M.D. (mother) and Mark D. (father) are the parents of M.C. (born April 2021). Mother appeals the juvenile court's order terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Mother's sole contention on appeal is that the Kern County Department of Human Services (department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about M.C.'s possible Indian ancestry.[2] The department concedes the error resulted in an inadequate inquiry, but maintains the error was harmless.

For the reasons discussed herein, we accept the department's concession of error. However, consistent with our recent decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) __ Cal.App.5th __ [2022 Cal.App. Lexis 923] (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, **4–5].)

---

[1] All further statutory references are to the Welfare and Institutions Code.

Additionally, we note that section 366.26 was amended by Assembly Bill No. 2711 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to the issue raised on appeal.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

## I. Petition and Detention

On April 8, 2021, the department filed a petition on behalf of M.C. shortly after he was born pursuant to section 300, subdivision (b), alleging he was at substantial risk of suffering serious physical harm or illness due to mother's substance abuse and her inability to provide him with adequate shelter. Both mother and M.C. tested positive for amphetamines at his birth, and mother admitted abusing methamphetamine twice a day for three years. Additionally, mother lived in a "c-train" that was parked at a used car lot without running utilities and had a history of homelessness. M.C. was subsequently placed in protective custody.

On April 14, 2021, mother completed a Parental Notification of Indian Status form (ICWA-020) and checked the box stating that none of the Indian ancestry questions applied. That same day, the juvenile court conducted a detention hearing. Only mother appeared. The juvenile court stated it had received mother's ICWA-020 form indicating she did not have Indian ancestry. Mother testified to the same. The court asked mother if anyone in her family had ever lived on a reservation, been enrolled in or eligible for enrollment in an Indian tribe, or had ever received benefits from an Indian tribe. Mother responded "no" to all the questions. Based on mother's testimony and her ICWA-020 form, the court found ICWA did not apply as to mother. The court instructed mother that if she obtained any information indicating she may belong to an American Indian or Eskimo tribe, to let her attorney, social worker, and the court know so that further inquiry could be conducted. The court found M.C. came within section 300 and ordered him detained from the parents. The detention hearing as to father was continued to the following day. Father failed to appear at the continued detention hearing. His

---

**3** Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

whereabouts were unknown, and the court proceeded to make detention findings and orders as to father.

## II.     Jurisdiction and Disposition

### A.     *Jurisdiction*

The jurisdiction social study reflected the juvenile court's prior finding that ICWA did not apply based on the information mother had provided.

On May 6, 2021, father completed an ICWA-020 form and checked the box stating that none of the Indian ancestry questions applied. That same day, the juvenile court conducted a combined jurisdiction and disposition hearing where father made his first appearance. The court conducted an ICWA inquiry for father. The following colloquy ensued:

> "Q. [Father], it's my understanding that you've informed your attorney that you do not have any Native American heritage?
>
> "A. No.
>
> "Q. Has anyone in your family ever lived on an Indian reservation or Indian lands?
>
> "A. No. No. I mean maybe my grandma.
>
> "Q. Well, so did your grandma live on an Indian reservation?
>
> "A. Well—well, she—she's actually [dead], so—well I don't know anything about that. So I—I really don't have—I don't know her, so I'll say no.
>
> "Q. All right. It's an important question, [father], because the court needs to figure out if you have any Native American heritage. So did you hear someone mention that your grandmother lived at an Indian reservation?
>
> "A. No. I—I—I don't know. No.
>
> "Q. Well, how did you—why did you make that comment that you think your mother—your grandmother lived on an Indian reservation.

4.

"A. No. I—I—those are tricky-ass questions 'cause I really don't know. I don't know, sir. I don't know. I don't know. I just thought it was funny, but, no.

"Q. Has anyone in your family ever been enrolled or eligible for enrollment in a Native American tribe?

"A. No, sir.

"Q. Okay. At any time, at any family gatherings or family get-togethers, has anyone in your family ever … mentioned that you might have some Native American heritage in your family?

"A. No, sir.

"Q. Okay. So you've never heard that before from anybody in your family?

"A. No."

Based on father's testimony, the juvenile court found ICWA did not apply as to father. Jurisdiction and disposition were continued.

On June 16, 2021, the juvenile court conducted a continued jurisdiction and disposition hearing. Neither mother nor father were present. The court found the allegations in the petition true and found ICWA did not apply. Disposition was continued.

### B.    Disposition

The disposition social study reiterated mother gave no reason to believe ICWA applied at the detention hearing and stated father had not attended any hearings for an ICWA inquiry to be made. He had not made himself regularly available to the department for it to make an ICWA inquiry.[4]

Additionally, the department reported that since M.C. had been placed in protective custody, it had been unable to locate any relatives and included documentation

---

[4]    The disposition social study incorrectly stated father had not attended any hearings. Father made his first appearance on May 6, 2021, at a combined jurisdiction and disposition hearing and the juvenile court conducted an ICWA inquiry at that time.

5.

of its efforts to do so. In April 2021, around the time of the detention hearing, the department attempted to locate maternal relatives using mother's name and birth date through various search programs but was unsuccessful. Thereafter, a social worker contacted mother and father as part of the family finding process. Mother stated she wanted M.C. placed with her friend D.C. and provided her phone number. Mother reported maternal grandmother lived in Sacramento and maternal grandfather was incarcerated in Oregon. She explained all of her siblings were minors and refused to provide their names. She did not want any of her family members involved and did not provide additional information. Father provided paternal grandparents' names but did not provide sibling information. He stated, " 'They're in Sacramento,' " but would not say who. He then refused to provide further information. After receiving the information from the parents, the department attempted to locate the maternal grandmother in Sacramento and the maternal grandfather in Oregon and on the inmate database but was unable to locate them.

On August 13, 2021, the juvenile court held a continued disposition hearing. Neither mother nor father appeared. While making findings and orders the juvenile court paused and stated, "I want to verify that we have made necessary ICWA findings with respect to [father]." Counsel for the department confirmed that ICWA inquiry as to father had been made. The court adjudged M.C. a dependent of the court, ordered him removed from the parents' custody, and ordered the parents to participate in reunification services and supervised visitation.

## III. Six-Month Review

The six-month review social study reiterated ICWA was found not to apply and reported no new information had been provided.

In September 2021, M.C. was placed with paternal aunt S.W.

On February 8, 2022, the juvenile court conducted a six-month review hearing. Neither mother nor father were present, but S.W. was present. The parents had not made

6.

any efforts to alleviate or mitigate the causes necessitating placement. The court ordered the parents' reunification services terminated and set a section 366.26 hearing.

## IV. Section 366.26

The section 366.26 social study stated that on March 8, 2021, the juvenile court found ICWA did not apply.[5] M.C. was still in placement with S.W., and she was committed to adopting him.

On June 8, 2022, the juvenile court conducted the section 366.26 hearing. Mother and S.W. were present. The court found there was clear and convincing evidence M.C. was likely to be adopted and terminated parental rights.

Mother subsequently filed a timely notice of appeal.

## DISCUSSION

## I. ICWA

### A. Background

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *9–10], fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of

---

[5] Nothing in the record shows the court made such a finding on March, 8, 2021. The petition had not even been filed by that date as it was filed on April 8, 2021. On April 14, 2021, the juvenile court found ICWA did not apply as to mother. On May 6, 2021, the juvenile court found ICWA did not apply as to father.

ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10].)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *10–11].)

**B.    Summary of Duties of Inquiry and Notice**

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *11–12].)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the

[Bureau of Indian Affairs].' "[6] (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)[7] Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

---

[6] Section 224.2, subdivision (k), was amended by Assembly Bill No. 2960 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to our discussion in this case.

[7] "Courts have recognized it is somewhat inaccurate to refer to the agency's ' " 'initial duty of inquiry' " ' [citation] because the duty ' "begins with the initial contact" (§ 224.2, subd. (a)) and continues throughout the dependency proceedings' [citation]. However, in this case, like many others, an ICWA inquiry was made only of the parents and after the juvenile court found ICWA did not apply at the detention hearing, no further information was gathered. Given that our discussion on error … focuses on the first step of the inquiry and does not involve the duty of further inquiry or notice, we use the term duty of initial inquiry." (*K.H.*, *supra*, 84 Cal.App.5th at p. 597, fn. 10.)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

## II.    Analysis

### A.    Summary of ICWA Inquiry

The record reflects mother filed an ICWA-020 form denying Indian ancestry and that at her first appearance in court, she testified to the same. The court instructed mother to inform her attorney, social worker, and the court if she subsequently received information indicating otherwise and found ICWA did not apply as to her. Father also filed an ICWA-020 form denying Indian ancestry, but during the court's inquiry, he

10.

testified his grandmother may have lived on an Indian reservation. He then said he did not know and that she had died. When asked why he made the statement about his grandmother, he said those were "tricky" questions and he thought it was "funny." He denied anyone in his family was enrolled in, or eligible for enrollment, in an Indian tribe. He never heard anyone in his family mention there was Indian ancestry in his family. The juvenile court found ICWA did not apply as to father, but did not instruct him to inform the court if he received new information indicating M.C. might be an Indian child. There is no indication ICWA inquiries were made of anyone else, even though S.W., the child's prospective adoptive parent and paternal aunt, was in contact with the department and appeared at the six-month review and section 366.26 hearings.[8] Mother argues the department and the juvenile court failed to comply with their duties of inquiry under ICWA and specifically identifies S.W. as an extended family member who should have been inquired of. The department concedes error, but argues the error was harmless and urges us to apply the "reason to believe approach" articulated in *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted September 21, 2022, S275578.

Recently, in *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the four general approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022

---

**8** In addition, we note that early in the proceedings the department was in contact with D.C., mother's long-time friend who wanted to obtain guardianship of M.C. Although mother does not argue the department should have inquired of D.C., she was an interested party because she wanted to obtain guardianship over M.C. (§ 224.2, subd. (b) [the department's duty of inquiry included asking "others who have an interest in the child" about the child's Indian ancestry].) The record does not reflect whether the department asked D.C. whether M.C. had possible Indian ancestry.

Cal.App. Lexis 923, *33–34].)  Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

### B.      Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, __ Cal.App.5th __ [2022 Cal.App. Lexis 923, *17].)  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid.*)  Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18].)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.]  The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.]  The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation].  '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *18].)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of'

12.

various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19]; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *18–19]; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19].)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *19–20].)

## C.     Department and Juvenile Court Erred

### 1.     Duties

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

Moreover, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the court[ or the department] has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or the department] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e).)  "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (*Id*., subd. (e)(1).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how

14.

and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[9]

## 2. Juvenile Court's Finding Unsupported by Substantial Evidence

Here, the department inquired only of mother and father, which fell short of complying with the plain language of section 224.2, subdivision (b). "We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child. However, '[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function.' [Citation.] [County welfare departments] and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once [county welfare departments] provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 619–620, fn. omitted.)

"[T]he law demands more than merely inquiring of [m]other and [f]ather" (*K.H.*, *supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)), a point the department does not dispute. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the

---

**9** All further references to rules are to the California Rules of Court.

[department's] inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, at p. 589; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *43].)

Under these circumstances, the department did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b) & (e).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

## D. Prejudice

"Where, as here, the deficiency lies with [a department's] duty of initial inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *32–33].)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *33].)

16.

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[10] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37].) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 609; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *34].) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *34–35].) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at p. __ [2022 Cal.App. Lexis 923, *11–12].)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in

---

**10** *People v. Watson* (1956) 46 Cal.2d 818, 836.

17.

the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *37–38].) "Thus, 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *38], quoting *K.H.*, at p. 591), and " 'requiring adequacy as the law directs "is generally the only meaningful[ ] way to safeguard the statutory right[s]" as intended under ICWA and related California law [citation]. If this step is disregarded, the protection Congress and the state Legislature intended to afford tribes goes unrealized.' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *38–39], quoting *K.H.*, at p. 609.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, *40].) Here, the department's inquiry, limited only to mother and father, " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, *42], quoting *K.H.*, at p. 620), and "[a]

18.

finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, \*41], quoting *K.H.*, at p. 611.)  Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded.  The juvenile court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 923, \*44], quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.)  " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [M.C.]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment.  So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)' " (*E.C.*, at p. __ [2022 Cal.App. Lexis 923, \*44–45], quoting *K.H.*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5).  If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, its

19.

ICWA finding shall be reinstated. In all other respects, the juvenile court's order terminating parental rights is affirmed.